UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EDMOND H. BOCTOR and MICHELLE BOCTOR

              Plaintiffs,
v.

KATHLENE CZEKUS and CRETE CARRIER
CORPORATION,

              Defendants.

**DECISION AND ORDER**
10-CV-307S

## I. INTRODUCTION

In this diversity action, Plaintiff Edmond Boctor alleges that he was "seriously injured" as defined by New York State Insurance Law § 5102(d) when he was struck by a truck driven by Defendant, Kathleen Czekus, while she was in the employ of co-Defendant, Crete Carrier Corporation ("Crete").[1] Presently before this Court is Defendants' motion for summary judgment. (Docket No. 43.) For the following reasons, that motion is granted.

## II. BACKGROUND

### A.  Facts

The basic facts in this case are not in dispute: Principally as a result of Czekus' negligence, she and Boctor were in a car accident in the Town of Tonawanda, New York on August 25, 2008.[2,3] (Defendants' Statement of Facts ("Defs.' State."), ¶ 1; Docket No.

---

[1] Edmond Boctor's wife, Michelle Boctor, also brings a derivative loss of consortium claim.

[2] This Court has accepted facts in Defendants' statement of facts to the extent that they have not been controverted by Boctor. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

[3] Defendants papers refer to the town as "Towanda, New York." This Court will take judicial notice that the proper locale is the "Town of Tonawanda, New York."

45.)

Boctor was seen by several doctors in the years following the accident, including five visits with his physician, Douglas Moreland, M.D., who reported that immediately after the accident he was taken to Kenmore Mercy Hospital with complaints of neck, shoulder, and chest pain. (10/20/2011 Moreland Report, p. 1, attached as "Ex. 2" to Quinn Aff.; Docket No. 50-3.) According to Dr. Moreland, he was released that day. (Id.) Thereafter, Dr. Moreland opined that on Boctor's initial visit with him, Boctor exhibited signs of "some posterior cervical neck tenderness, but full range of motion of his neck." (Id.) He did, however, feel "some achy discomfort in the back of the neck" and "achiness in the back." (Id.) Over the course of his next four visits with Dr. Moreland, Boctor's neck pain "generally improved," but upon release from Dr. Moreland's care, he continued to have pain in the lower back and left leg. (Id.) Dr. Moreland considered him "fully disabled" from August 25, 2008 to February 9, 2009. (Id.)

Wayne Kerness, M.D., an orthopedic surgeon, conducted an independent medical examination ("IME") on Boctor on October 29, 2008. (Defs.' State., ¶ 7.) He concluded that Boctor required no further treatment and that he was capable of working and performing activities of daily living without restrictions. (Id., ¶ 9.)

On March 26, 2009, Dr. Patrick Hughes, M.D., a neurologist, conducted a IME on Boctor and concluded that "from a neurology standpoint, the claimant does not need further treatment." (3/26/09 Hughes Report, p. 5, attached as "Ex. 4" to Quinn Aff.; Docket No. 50-5.)

Michael Landi, M.D., a neurosurgeon, conducted an IME on Boctor on April 1, 2011. (Defs.' State., ¶ 10.)  Dr. Landi found that the medical history demonstrated that Boctor

experienced cervical and lumbar strain as a result of the accident. (Landi Report, p.13, attached as "Ex. D" to Defs.' Mot. for Summ. J.; Docket No. 43.) He concluded that Boctor sustained "no casually related limitations" and that his "prognosis is good." (Defs.' State., ¶ 11.)

**B.      Procedural History**

This action commenced in this Court when Defendants filed their notice of removal on April 13, 2010. (Docket No. 1.) After discovery, Defendants filed a motion for summary judgment on Feburary 14, 2012. Briefing concluded on April 18, 2012, at which time this Court took the motion under advisement without oral argument.

### III. DISCUSSION

**A.      Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is

summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.    Serious Injury**

New York Insurance Law § 5104(a) provides that there shall be no right of recovery for "personal injuries arising out of the negligence in the use or operation of a motor vehicle . . . except in the case of a serious injury or for basic economic loss."[4] Serious injury is defined as:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

---

[4]Choice of law is the first question a federal court sitting in diversity must address. Here, both parties rely on New York law in their briefs and have thus implicitly agreed that New York law governs. See Ten Seventy One Home Corp. v. Liberty Mut. Fire Ins. Co., No. 07 Civ. 11211(DLC), 2008 WL 2464187, at *3 n. 2 (S.D.N.Y. June 18, 2008) ("All parties have relied on New York law to defend their claims in this diversity action. The parties having consented to the application of forum law, that consent is sufficient to end the choice of law inquiry") (citing 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 743 (2d Cir.1999)).This Court, therefore, need not engage in a further choice-of-law inquiry.

N.Y. Ins. Law § 5102(d).

These provisions, part of what is commonly referred to as New York's "No-Fault Law," were meant to "weed out frivolous claims and limit recovery to significant injuries." See Toure v. Avis Rent A Car Sys., 98 N.Y.2d 345, 350, 774 N.E.2d 1197, 746 N.Y.S.2d 865 (2002).

On a motion for summary judgment, "a defendant has the initial burden of establishing a 'prima facie case that the plaintiff's injuries are not serious.'" Sanchez v. Travelers Cos., 658 F. Supp. 2d 499, 507 (W.D.N.Y. 2009) (quoting Gaddy v. Eyler, 79 N.Y.2d 955, 957, 582 N.Y.S.2d 990, 591 N.E.2d 1176 (1992)). A defendant may satisfy this burden by providing a physician's report that concludes, based upon objective evidence, that the plaintiff either has no injuries or has recovered from them. See Toure, 98 N.Y.2d at 350.

The burden then shifts to the plaintiff to come forward with objective evidence demonstrating that he suffered a serious injury. Sanchez, 658 F. Supp. 2d at 507 (W.D.N.Y. 2009). "[S]ubjective complaints alone are not sufficient." Toure, 98 N.Y.2d at 350.

Boctor asserts that he suffered such a serious injury and that summary judgment is unwarranted because he (1) sustained a permanent consequential limitation of use of a body member, (2) sustained a significant limitation of use of a body function or system and, (3) was limited for at least 90 days of the 180 days immediately following the accident.

### 1. "Significant Limitation and "Permanent Consequential Limitation"

"Whether a limitation of use or function is 'significant' or 'consequential' (i.e., important) relates to medical significance and involves a comparative determination of the

5

degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." Dufel v. Green, 84 N.Y.2d 795, 798, 622 N.Y.S.2d 900, 647 N.E.2d 105 (1995) (internal citations omitted).

Boctor rests his claim that he sustained both a significant limitation and permanent consequential limitation solely on the fact that several tests indicated his range of motion was restricted as a result of the accident. He argues that this restriction both defeats Defendants' *primia facie* summary judgment case and serves as objective evidence demonstrating that he suffered a serious injury, thus satisfying his burden. However, Drs. Landi, Hughes, and Kerness' reports unquestionably conclude that Boctor suffered no serious injury. As such, Defendants have met their initial burden, see Toure, 98 N.Y.2d at 350, requiring Boctor to demonstrate otherwise, see Sanchez 658 F. Supp. 2d at 507.

In an effort satisfy this burden, Boctor points out that both his doctor and Dr. Landi noted restrictions in his range of motion. Dr. Moreland, for instance, opined in 2009 that Boctor's range of motion in his neck was limited by "about 25%" due to the pain in his neck." (1/20/09 Moreland Office Notes, p. 2, attached as "Ex. 2" to Quinn Aff.; Docket No. 50-3.) Dr. Landi's range-of-motion tests indicated restriction in three of twelve areas.[5] Although not mentioned in Boctor's memorandum of law, Dr. Hughes, in the course of

---

[5]The test results are reproduced below. Aside from "F," which represents "flexion" and "E," which represents "extension," the remaining notations go unexplained. Presumably, ROM is shorthand for "Range of Motion."

**Cervical ROM**:
| | |
|---|---|
| F: 40 degrees (50) | E: 30 degrees (60) |
| Rot rt : 80 degrees | lt: 80 degrees (80) |
| LB rt: 45 degrees | lt: 45 degrees (45) |

**Lumbar ROM:**
| | |
|---|---|
| F: 60 degrees (60) | E: 20 degrees (25) |
| Rot rt: 30 degrees | lt: 30 degrees (30) |
| LB rt: 25 degrees | lt: 25 degrees (25) |

conducting an IME on March 26, 2009, also found range-of-motion restrictions. (Hughes Report, p. 3). But other tests were inconsistent. Dr. Kerness performed a straight-leg test on October 29, 2008, which was negative in both the seated and supine positions. (Kerness Report, p. 3, attached as "Ex. C" to Defs.' Mot. for Summ. J.; Docket No. 43.) The only limitation Dr. Kerness found was a 12 percent reduction in the "forward-flex" position. (Id.) All other areas were normal. (Id.) Even Dr. Moreland found Boctor had full range of motion with only "some achy discomfort" in his first consultation with Boctor after the accident. (10/20/11 Moreland Report, p. 1).

However, even assuming that this evidence were definitive (and fully explained), Boctor does not meet his burden because the record is devoid of any other objective evidence demonstrating that he suffered a serious injury. Although a plaintiff may show the extent of or degree of a physical limitation through an expert report that "designat[es] . . . a numeric percentage of a plaintiff's loss of range of motion," Toure, 98 N.Y.2d at 350, New York courts have repeatedly held that a finding of reduced range of motion alone is insufficient to support a finding of serious injury. See, e.g., O'Brien v. Bainbridge, 89 A.D.3d 1511, 1512, 932 N.Y.S.2d 785 (4th Dep't 2011); Parreno v. Jumbo Trucking, Inc., 40 A.D.3d 520, 524, 836 N.Y.S.2d 593 (1st Dep't 2007); Blanchard v. Wilcox, 283 A.D.2d 821, 823-24, 725 N.Y.S.2d 433 (3rd Dep't 2001). Courts within this Circuit have faithfully followed this approach. See LaSante v. Ackley, No. 1:08-CV-0744 (LEK/DRH), 2010 WL 3522300, at *4 (N.D.N.Y. Sept. 1, 2010) ("Notably, courts within this Circuit have held that range of motion tests are insufficient to support a claim of serious injury because they are based on the patient's 'subjective expressions of pain'") (internal citation omitted); Piper v. Henderson, No. 07-CV-263 (RRM)(SMG), 2008 WL 3200204, at *1 (E.D.N.Y. 2008)

(range of motion tests may support a showing of a serious injury only when they are coupled with other objective medical evidence "such as MRIs showing disc herniations and bulges" resulting from the injury); Pfeiffer v. Mavretic, No. 04-cv-155, 2007 WL 2891433, at *8 (W.D.N.Y. Sept. 28, 2007) ("It has been consistently held that a measure of [a range of motion] limitation, *together with* an MRI or other formal objective test, is sufficient to create a genuine issue of material fact") (emphasis added).

Here, the only other objective sign of injury is a C5-6 disc herniation, observed by Dr. Moreland in an October 2009 MRI. However, there is no dispute that this was not the result of the accident, and Dr. Moreland himself noted that the herniation "was present prior to the motor vehicle accident in question here." (10/20/11 Moreland Report, p. 3). Dr. Moreland found no further cervical disability. Two other MRIs taken in October of 2008 and April of 2009 showed no "significant pathology in the lower back" and only "mild age-related degenerative changes." (Id.) An April 30, 2009 X-ray produced similarly benign results. Further, each of the three physicians who conducted an IME concluded that Boctor required no further treatment and was doing well. Lacking other objective medical evidence, "as a matter of law,[] [P]laintiff suffered no serious injury" and "there is nothing for the jury to decide." See Licari v. Elliott, 57 N.Y.2d 230, 238, 441 N.E.2d 1088, 455 N.Y.S.2d 570 (1982); see also LaSante, 2010 WL 3522300 at *4.

### 2.     90 of 180 days

To demonstrate a serious injury under the 90-out-of-180-day impairment prong of the "serious injury" definition, a plaintiff must show that he was prevented from performing "substantially all of the material acts which constitute [his] ... customary daily activities for

not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." N.Y. Ins. Law § 5102(d). A plaintiff must also "present objective evidence of 'a medically determined injury or impairment of a non-permanent nature.'" Toure, 98 N.Y.2d. at 357 (quoting N.Y. Ins. Law § 5102(d)).

Here, Boctor relies on his extended absence from work and Dr. Moreland's opinion that he was "fully disabled" from 8/25/08 to 2/9/09, a time frame spanning 168 days starting with the day of the accident. But "[t]he fact that he missed more than 90 days of work is not determinative," and an affidavit stating that the plaintiff is totally disabled is "too general to raise an issue of fact." Blake v Portexit Corp., 69 A.D.3d 426, 426-27, 893 N.Y.S.2d 28 (1st Dep't 2010). One reason that such a statement is too general is exemplified by Dr. Moreland's contradictory statements in this case. In December of 2008, Dr. Moreland noted that Boctor could return to light-duty work on January 5, 2009, which, of course, was within the period that he also pronounced Boctor "fully disabled." (12/31/2008 Moreland Office Notes, p. 2, attached as "Ex. 2" to Quinn Aff.; Docket No. 50-3.) Thus, it remains unclear whether Dr. Moreland, in labeling Boctor "fully disabled," meant to refer to Boctor's ability perform "substantially all his customary daily activities" as is required under the statute, or whether, as suggested by his equivocation, he meant simply to refer to Boctor's ability to perform the full duties of his job.

Further, even if Dr. Moreland's opinion were more developed, Boctor fails this prong of the definition for the same reasons as discussed above: the record is devoid of objective medical proof, which under this prong is necessary to verify his inability to perform substantially all of the material acts that constitute his daily activities. Just as in other categories of the "serious-injury" definition, "allegations that injuries fall within this category

9

must be substantiated by objective medical proof; self-serving statements are insufficient to raise a triable issue of fact." Brusso v. Imbeault, 699 F. Supp. 2d 567, 583 (W.D.N.Y. 2010); see also Hyacinthe v. United States, No. 05 Civ. 1363(KAM), 2009 WL 4016518, at *12 (E.D.N.Y. Nov. 19, 2009) ("objective medical findings" are required to prove 90/180 impairment); Son v. Rockwood, No. 07-CV-4189 (JMA), 2008 WL 5111287, at *7-*8 (E.D.N.Y. Nov. 26, 2008) (granting summary judgment on 90/180 impairment where plaintiff offered no objective proof and relied only on his own testimony regarding his disability). Just as limited range of motion is insufficient to show a serious injury under the first two categories, so it is here as well.

For those reasons, summary judgment in Defendants' favor is warranted on this ground.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 43) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: May 17, 2012
     Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                         Chief Judge
                                United States District Court